UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LISA T. LEBLANC, ET AL.                    CIVIL ACTION

VERSUS                                     NO: 12-2059 AND
                                           CONSOLIDATED CASES

TEXAS BRINE, LLC                           SECTION: "A" (4)

<u>**ORDER**</u>

Third-party defendants Adams Resources Exploration Corp. and
Browning Oil Co. have filed a **Motion to Dismiss Pursuant to FRCP
12(b)(6) for Failure to State a Claim (Rec. Doc. 573)**. Texas
Brine Co., LLC ("TBC") has filed an opposition (Rec. Doc. 586)
and supplemental opposition (Rec. Doc. 621). Movants have filed a
joint reply (Rec. Doc. 631). The motion, noticed for submission
on May 20, 2015, is before the Court on the briefs without oral
argument.[1]

Plaintiffs brought these various consolidated actions to
recover damages resulting from the development of a "sinkhole" on
property allegedly belonging to and/or under the control of
defendants TBC and Occidental Chemical Corporation near the
hamlet of Bayou Corne in Assumption Parish, Louisiana. Plaintiffs
allege that the sinkhole resulted from the failure of a salt

---

[1] Texas Brine has requested oral argument but the Court is
not persuaded that oral argument would be helpful in light of the
issues presented.

cavern owned by TBC, with that failure perhaps caused by some reworking activities undertaken by TBC in September 2010. (CA12-2059, Rec. Doc. 1, Complaint ¶ 4).

TBC filed a third-party demand ("TPD") against Adams and Browning, two oil and gas exploration companies that had previously conducted operations on the Hooker #1 Well, which was located adjacent to the Oxy Geismar Well #3 (the well used to mine the now collapsed salt cavern). (Rec. Doc. 557). TBC's contention is that the Hooker #1 Well was directionally drilled in such a manner that it extracted oil from the reservoir known as "Big Hum," which tended to dramatically reduce pressure in the reservoir. (Id. ¶¶ 162-63). According to TBC, because the reservoir had previously provided support to the outer wall of the salt cavern of Oxy Geismer Well #3, the reduced pressure in the Big Hum reservoir caused or contributed to the collapse of the salt cavern and the formation of the sinkhole. Adams drilled the Hooker #1 Well in 1986, and Browning operated the well from 1991 to 2001. (Rec. Doc 573-1, Movants' Memo at 1). The well was "shut-in" in approximately September 2001. (Rec. Doc. 557, TPD ¶ 469).

TBC has asserted claims against Adams and Browning on theories of negligence, strict liability, and contribution to recover any amounts for which TBC may be found legally liable to

2

Plaintiffs (*Id.* ¶ 171)[2] as well as the approximately $80 million dollars in response costs that TBC incurred after the emergence of the sinkhole (*Id.* ¶ 210). Adams and Browning now move for dismissal pursuant to Rule 12(b)(6) arguing that none of TBC's claims are cognizable as a matter of law.

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). In evaluating the merits of such a motion the Court must construe the complaint liberally in favor of the plaintiff and take all facts pleaded in the complaint as true. *Id.* In the Fifth Circuit this strict standard is summarized as follows: "[T]he question [] is whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Id.*

At this juncture the cause or causes of the Bayou Corne sinkhole have not been determined. The Court therefore assumes for the sake of argument that the sinkhole was caused by human fault as opposed to an act of God. And accepting TBC's allegations as true, the Court assumes that Adams' and Browning's past activities, regardless of their remoteness in time, caused

---

[2] This paragraph of the TPD actually refers to "Florida Gas" instead of "Plaintiffs" but the Court assumes that this reference was made in error. (Rec. Doc. 557 at 48).

the TBC salt cavern to collapse resulting in the Bayou Corne Sinkhole. If TBC, Adams, and Browning were all at fault for causing the Sinkhole then TBC cannot seek tort indemnity from Adams and Browning under Louisiana law. The Louisiana Supreme Court explained in *Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 185 (La. 1999), that tort indemnity that arises by operation of law arises only where the liability of the person seeking indemnification is solely *constructive or derivative*. The action for indemnity lies against one, who because of his act, has caused such constructive liability to be imposed. *Id.* (citing *Bewley Furn. Co. v. Maryland Cas. Co.*, 285 So. 2d 216, 219 (La. 1973)). As such, tort indemnity by operation of law is a species of equitable relief grounded on principles of restitution for an otherwise unjust enrichment. *See id.* at 186 (quoting *Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422, 431 (La. 1967)).

The Court finds it highly unlikely that any fact-finder would conclude that TBC was completely free from *actual* fault, *i.e.*, that TBC was only constructively or derivatively at fault, thereby entitling TBC to tort indemnity by operation of law. But TBC correctly points out that challenges related to the likelihood of success on the merits do not entitle Movants to Rule 12(b)(6) relief.

Adams and Browning argue that TBC has pleaded its claims for tort indemnity such that they are expressly premised on the

4

condition of TBC being held at fault vis à vis Plaintiffs, and that such fault precludes a finding of mere constructive or derivative fault. (Rec. Doc. 573-1, Movants' Memo at 8-9). The Court disagrees with Movants' characterization of TBC's allegations. The allegations refer to TBC being found "liable" to Plaintiffs not to TBC being at fault for the sinkhole. A tort indemnity claim only arises if the defendant is held liable to the plaintiff but it is the nature of that liability that dictates whether the claim for tort indemnity is cognizable. Moreover, TBC points out that the Plaintiffs have sued under various theories including strict liability, which if applicable, by its very nature has the potential for liability without actual fault.[3] The Court agrees with TBC's contention that the TPD against Adams and Browning cannot be dismissed in its entirety because of the possibility of recovery under a theory of tort indemnity.[4]

_____

[3] This potential is affected by which version of Louisiana's strict liability applies. Because the Court is not granting Movants' motion to dismiss the TPD in its entirety, the Court declines to address the arguments regarding strict liability and whether any party in this case can avail itself of the pre-tort reform version of that type of liability.

[4] Adams and Browning correctly point out that under the facts alleged, TBC has no claim for contribution in light of Louisiana's adoption of comparative fault and the elimination of solidary liability for non-intentional torts. In other words, because TBC cannot be cast in judgment for any other party's fault it cannot claim contribution from any other tortfeasor. TBC did not take issue with this assertion in its opposition.

5

Finally, the Court agrees with TBC's assertion that the question of legal duty should not be determined on the pleadings. (Rec. Doc. 621, Supp. Opposition at 2). Therefore, Movants are not entitled to Rule 12(b)(6) relief regarding TBC's claims for non-indemnity costs.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss Pursuant to FRCP 12(b)(6) for Failure to State a Claim (Rec. Doc. 573)** filed by third-party defendants Adams Resources Exploration Corp. and Browning Oil Co. is **DENIED**.

June 3, 2015

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE