UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA T. LEBLANC, ET AL | CIVIL ACTION |
| VERSUS | NO. 12-2059 & CONSOLIDATED CASES |
| TEXAS BRINE CO., LLC, ET AL. | SECTION A(5) |

## ORDER AND REASONS
[Ref: All Cases]

The following motions are before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 744)** and **Motion for Partial Summary Judgment on Choice of Law Against Liberty Insurance Underwriters, Inc. (Rec. Doc. 757)**—both filed by Texas Brine Co., LLC. The motions are opposed by numerous insurers.[1] Plaintiffs Dianne Sanchez, et al. have filed a memorandum in support of Texas Brine's position. (Rec. Doc. 871). The motions, noticed for submission on November 4, 2015, are before the Court on the briefs without oral argument. For the reasons that follow, the Motion for Partial Summary Judgment is DENIED WITHOUT PREJUDICE and the Motion for Partial Summary Judgment on Choice of Law Against Liberty Insurance Underwriters, Inc. is GRANTED IN PART AND DENIED IN PART.

---

[1] The Zurich Insurers (Rec. Doc. 837); National Union, AIG Specialty, ICSOP, and Lexington (Rec. Doc. 838); Chubb Custom (Rec. Doc. 839); Liberty Insurance Underwriters, Inc. (Rec. Doc. 840); St. Paul, individually and as successor to Gulf Insurance Co., and Travelers CT (Rec. Doc. 841); Great American (Rec. Doc. 842); TIG (Rec. Doc. 843).

**I.     Background**

Plaintiffs brought these consolidated actions to recover damages resulting from the development of a "sinkhole" on property allegedly belonging to and/or under the control of defendants Texas Brine Co., LLC ("TBC") and Occidental Chemical Corporation near the hamlet of Bayou Corne in Assumption Parish, Louisiana.

In response to Plaintiffs' claims, TBC sued numerous insurers that issued liability policies to the company over the past twenty years. In the demands against its insurers, TBC seeks defense costs, indemnity, and with respect to Liberty Insurance Underwriters, Inc. ("LIUI"), damages, penalties, and attorney's fees pursuant to La. R.S. § 22:1973 (Good faith duty; claims settlement practices; cause of action).[2] The putative class of Plaintiffs Dianne Sanchez, et al. have filed claims against TBC's insurers under Louisiana's Direct Action Statute, La. R.S. § 22:1269.[3] (Rec. Doc. 790, Sec. Amend. & Supp. CA Comp.).

---

[2] Before TBC made a demand against LIUI in this litigation, LIUI filed a declaratory judgment action in the Southern District of Texas. When TBC ultimately asserted claims against its insurers in this litigation, it singled LIUI out for a § 1973 claim in part because TBC filed the declaratory judgment action in Texas. As the Court appreciates the claim, TBC is not suing LIUI under § 1973 merely because LIUI filed the dec action in Texas, but rather because LIUI's Texas filing included non-public or privileged documents that LIUI had obtained from its insured—documents that the public filing made available to the other insurers who also are disputing coverage. (Rec. Doc. 433, TBC Third-Party Demand and Cross-Claim ¶¶ 85-107).

[3] Direct action claims are not pending against every insurer. The putative class is defined as follows:

All individuals or entities, who, on August 2, 2012, either (a) owned or leased property impacted by the Bayou Borne Sinkhole Event, (b) owned or operated a business that was impacted by the Bayou Corne Sinkhole Event, or (c) resided in an area impacted by the Bayou Corne Sinkhole Event; who claim to have suffered any damages allegedly caused by the Bayou Corne Sinkhole Event *and* who are not members of the settlement class certified by this court on April 8, 2014 in "*LeBlanc et al. v. Texas Brine Co., LLC et al.,*" 2:12-cv-02069-JCZ-MBN, Eastern District of Louisiana.

"Bayou Corne Sinkhole Event" is defined as the sinkhole that appeared on or about August 3, 2012, in the Bayou Corne/Grand Bayou area of Assumption Parish, Louisiana, and the subsequent mandatory evacuation order issued by the Assumption Parish Office of Homeland Security and Emergency Preparedness on August 3, 2012.

TBC now moves for summary judgment on the question of which state's law applies to its claims against its insurers. TBC urges the application of Louisiana law, and its motion applies universally to all of its insurers, including excess insurer LIUI.[4] But according to TBC, two days after it filed its choice of law motion in this litigation, LIUI filed its own choice of law motion in the parallel Texas declaratory judgment action urging that Texas law should apply to the coverage claims. LIUI gave the Texas motion a much earlier submission date, allegedly to "make an end-run around this Court."[5] (Rec. Doc. 757, TBC MPSJ at 1). TBC responded with a second choice of law motion in this litigation, this time specifically against LIUI. Via its second choice of law motion, TBC asks the Court to find that Louisiana law applies to its claims against LIUI.[6]

## II.  Discussion

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v.*

---

(Rec. Doc. 438-1, Memo in Supp. of Motion for Class Certification at 1) (emphasis and incorrect case number in original).

[4] LIUI issued excess policy No. EXCSF183721-8 to Texas United Corporation, TBC's parent corporation, TBC, and seventeen other subsidiaries, including TBC, for the period March 1, 2012 to March 1, 2013. The LIUI policy is excess to multiple layers of underlying coverage. (Rec. Doc. 840, LIUI Opposition at 5-6).

[5] TBC sought expedited consideration of its motion against LIUI in this litigation so that this Court could rule on the choice of law issue before the federal court in Texas. The Court found that request to be impracticable in light of the number of insurers involved and other pressing matters on the Court's docket. TBC advises, however, that the state courts that have considered the choice of law issue have concluded that Louisiana law should apply with respect to insurance issues. (Rec. Doc. 757-1, TBC Memo in Supp. at 3 n.9 & Exhs. D & E).

[6] LIUI previously moved to sever and transfer TBC's claims against it to the Southern District of Texas, which is LIUI's chosen forum for its declaratory judgment action. (Rec. Doc. 594, TBC's Motion to Sever and Transfer, or Alternatively to Dismiss for Failure to State a Claim). The Court found LIUI's "change of venue" arguments to be unpersuasive. (Rec. Doc. 671, Ruling dated June 4, 2015). LIUI had alternatively moved to dismiss TBC's § 1973 claims based on the assertion that Texas law should govern the insurance contract. Given the posture in which the motion was brought the Court did not conduct an in depth choice of law analysis but did advise the parties that it found TBC's choice of law arguments favoring Louisiana law to be more persuasive. (*Id.* at 2 n.1).

*Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

**Motion for Partial Summary Judgment (Rec. Doc. 744)**

Several common themes run throughout the opposing insurers' oppositions.[7] The insurers object to TBC's "blanket" approach to the choice of law issue. The insurers contend that TBC cannot obtain a "sweeping" choice of law ruling without reference to a specific policy and without reference to an actual conflict in the laws of the competing states. The insurers point out that TBC's third-party demands involve about 23 different carriers and 113 policies. The insurers argue that TBC's motion, which is not policy-specific, improperly seeks an advisory opinion from the Court. Some insurers contend

---

[7] The Court does not refer to LIUI in this group of insurers. While LIUI by no means concedes the propriety of TBC's motion for summary judgment, LIUI does not take the position that the choice of law determination is premature or unripe at this stage of the litigation, nor could it given that LIUI moved for summary judgment against TBC on the choice of law issue in the Texas litigation. LIUI in turn points out that TBC argued prematurity in response to LIUI's choice of law motion filed in Texas. LIUI's substantive arguments in opposition to TBC's motion for summary judgment on choice of law are addressed below as part of the discussion of TBC's motion for summary judgment directed at LIUI specifically.

that TBC's motion is premature because discovery thus far has focused on class certification issues exclusively. Should the Court reach the choice of law issue, those insurers who expressed an opinion push for Texas law to apply to their policies.

TBC contends that the same factors that compel the application of Louisiana law to any one policy will apply to all policies. Hence, according to TBC, its approach to obtain an omnibus-type ruling is proper.

The Court will deny TBC's "blanket" motion for a choice of law ruling because as one insurer points out, if any given policy has an express choice of law provision then it may be conclusive of the choice of law question for claims made under that policy. (Rec. Doc. 837, Zurich Insurers' Opposition at 3 n.1). Of course the validity of any such express choice of law provision may be void as a matter of law if certain facts surrounding the delivery of the policy are met. *See* La. R.S. § 22:868. Further, the Court discerns from the insurers' oppositions that if their policies were before the Court then they would urge some of the same legal arguments that LIUI has raised in its opposition. As the Court explains below, the Court finds many of those legal arguments to be unpersuasive with or without reference to a specific policy so the ruling vis à vis LIUI will serve as a guide to the other insurers with respect to their policies. With that understanding, TBC's Motion for Partial Summary Judgment (Rec. Doc. 744) is DENIED WITHOUT PREJUDICE.

**Motion for Partial Summary Judgment on Choice of Law Against Liberty Insurance Underwriters, Inc. (Rec. Doc. 757)**

It is undisputed that LIUI's policy does not contain a contractual choice of law provision. Further, LIUI has identified at least one actual conflict in Louisiana and Texas

law when interpreting the scope of LIUI's pollution exclusion.[8] LIUI's position in opposition to TBC's choice of law motion is that the Court should reject the suggestion that Louisiana law applies *and* affirmatively rule that Texas law applies to the claims brought by TBC against LIUI.

The LIUI policy undisputedly has contacts with both Louisiana and Texas. This Court's choice of law analysis proceeds under Louisiana law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that in diversity cases a federal court must apply the same conflict of laws analysis that the state courts of the forum would use); La. Civ. Code art. 14 ("Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code."). Under Louisiana law, the choice of law analysis with respect to an insurance policy follows the general guidance of Louisiana Civil Code article 3515, and the guidance of article 3537, pertaining to conventional obligations. *See Champagne v. Ward*, 893 So. 2d 773, 786 (La. 2005). Article 3515 provides as follows:

> Except as otherwise provided in this Book, ***an issue*** in a case having contacts with other states is governed by the law of ***the state whose policies would be most seriously impaired if its law were not applied to that issue***.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

---

[8] LIUI recognizes that under *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119 (La. 2000), the pollution exclusion that it wants to rely upon to deny coverage will likely be unenforceable if Louisiana law applies to the endorsement. (Rec. Doc. 840, LIUI Opposition at 8 n.45).

Louisiana Civil Code art. 3515 (emphasis added).

Article 3537 provides as follows:

Except as otherwise provided in this Title, *an issue* of conventional obligations is governed by the law of *the state whose policies would be most seriously impaired if its law were not applied to that issue*.

That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537 (emphasis added).

Louisiana's choice of law analysis for conventional obligations has never followed "the wooden lex loci contractus rule." La. Civ. Code art. 3537 cmt. (b). The fact that one state has more contacts with the dispute than another state does not necessarily mean that the law of the first state should be applied to any or all issues of the dispute, unless the contacts are of the kind that bring into play policies of that state that "would be most seriously impaired if its law were not applied" to the issue at hand. *Id.* cmt. (e). Depending upon the nature of the contract, a single factual contact with the State of Louisiana may outweigh even numerous factual contacts with another state if the dispute brings into play a strong public policy of this state. *See id.*

The choice of law analysis begins with identifying the relevant policies of the involved states. TBC contends that Louisiana has a strong public policy in favor of protecting the interests of persons injured or damaged in this state. TBC contends that this interest extends to companies doing business in this state, especially companies

that have been operating in this state for extended periods of time, even if the company is domiciled under the laws of another state. TBC emphasizes that direct action plaintiffs have sued the insurers directly, and that the presence of direct action plaintiffs has historically tipped the scales in favor of applying Louisiana law. TBC does not deny that Texas has a strong public policy of regulating insurance in that state but TBC argues that Louisiana is clearly the state whose policies would be most seriously impaired if its laws were not applied. According to TBC, it would be absurd to suggest that any other state could have a greater interest in this matter than the State of Louisiana.

According to LIUI, the pertinent state policy at issue with respect to Texas is that state's interest in regulating insurance policies issued to its citizens. (Rec. Doc. 840, Opposition at 11). LIUI argues that this significant interest is evinced by Texas Insurance Code article 21.42, which states that "[a]ny contract of insurance payable to any citizen or inhabitant of [Texas] by any insurance company or corporation doing business within [Texas] shall be held to be a contract made and entered into under and by virtue of the laws of [Texas] relating to insurance, and governed thereby . . . ." LIUI characterizes the dispute with TBC as nothing more than a contract dispute between a Texas citizen and its insurer. LIUI denies that Louisiana has any interest whatsoever in the outcome of TBC's dispute with LIUI. LIUI argues that the pertinent choice of law analysis establishes that Texas is the only state with a real and substantial interest in having its laws apply to this contract matter.

The Court is persuaded that under a proper choice of law analysis Louisiana is clearly the state whose policies would be most seriously impaired if its law were not

applied, at least with respect to the coverage dispute. *See* note 8, *supra*. LIUI's analysis in favor of Texas law suffers from several legal errors.

First, the suggestion that Louisiana has no interest in the coverage dispute between LIUI and TBC derives from the faulty premise that LIUI's insurance policy is nothing more than an ordinary business contract between two out-of-state companies. TBC is a Texas company but it has conducted operations in this state for many decades. During its years of conducting business in this state TBC has employed citizens of this state and received the benefits of the laws of this state. In other words, even though the company is headquartered in Texas, TBC has a substantial commercial presence in Louisiana. TBC's long-time operations in this state distinguish this case from cases like *Harrison v. R.R. Morrison & Son, Inc.*, 862 So. 2d 1065 (La. App. 2nd Cir. 2003), where the insured was not a long-time resident of Louisiana, and *Champagne*, 893 So. 2d at 789, where the out-of-state insured only had a transitory connection to Louisiana. In stark contrast to those cases, the insured in this case has a long-standing and substantial connection to Louisiana.

Second, in addition to giving little or no weight to TBC's substantial connection to Louisiana, LIUI relies upon the principle that insurance policies are contracts to extrapolate the erroneous conclusion that the coverage dispute in this case is no different than a contractual dispute arising in any other private business contract. Every state, including Louisiana and Texas, regulates insurance policies not only for the protection of the insured but also for the protection of injured third-parties. In Louisiana, our Insurance Code explicitly expresses this State's policy that an insurance policy is a special type of contract infused with public policy concerns pertaining to the protection

of injured persons who are not parties to the contract. *See* La. Rev. Stat. Ann. § 22:1269(D) (West. Supp. 2015) ("[A]ll liability policies within their terms and limits are executed for the benefit of all injured persons . . . to whom the insured is liable."). As TBC points out, Louisiana courts have historically recognized the significance of this Louisiana policy in the choice of law analysis. *See, e.g., Dunlap v. Harford Ins. Co.*, 907 So. 2d 122, 124 (La. App. 1st Cir. 2005); *In re Combustion, Inc.*, 960 F. Supp. 1056, 1068 (W.D. La. 1997) (Haik, J.).

Of course, Louisiana law recognizes that an insurance policy is a conventional obligation governed by principles of contract. *See Gorman v. City of Opelousas*, 148 So. 3d 888 (La. 2014). To be sure, there are aspects of every insurance policy that will fall into this latter category and present nothing more than a first-part dispute between the insurer and its insured with no implications beyond the parties to the contract. In such a situation, Louisiana may have no interest at play in such a dispute. But the coverage dispute in this case has clear implications to parties besides LIUI and TBC so Louisiana most certainly has an interest in the outcome of the dispute. The Court is persuaded that LIUI's attempt to suffuse its entire insurance policy in Texas law ignores the "issue" specific analysis required by Louisiana's choice of law articles and urged by the other insurers.

Finally, LIUI's position and that of the other insurers, relies heavily on the decision in *Gorman v. City of Opelousas*, *supra*. *Gorman* holds that injured persons who are not parties to the insurance contract, such as direct action plaintiffs, have no greater rights under a policy than the insured. Thus, when the insured's failure to comply with a policy's notice requirement relieves the insurer of its coverage obligations under the

policy, the innocent direct action plaintiff suffers too. *Gorman*, 148 So. 3d at 898. The take-away from *Gorman* is that the public policy concerns that pervade Louisiana's Insurance Code, and more specifically our direct action statute, do not alter or outweigh the express terms and conditions of the policy. But the direct action statute specifically states that "[n]othing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state," La. R.S. § 22:1269(B)(2), and the *Gorman* decision is a straightforward application of this statutory principle. Contrary to the position taken by LIUI and several other insurers, *Gorman* did not efface the otherwise strong public policy regarding liability policies that are both implicit and explicit under Louisiana law and demote the direct action statute to nothing more than a procedural device that more appropriately belongs in the Code of Civil Procedure instead of the Insurance Code. And whatever else the decision holds, it certainly does not stand for the proposition that the existence of direct action plaintiffs is entitled to no weight under Louisiana's choice of law analysis.[9]

Having rejected LIUI's suggestion that the coverage dispute is merely a first-party squabble between LIUI and TBC about which Louisiana has no interest, and having further concluded that Louisiana does have a significant public policy implicated by the coverage dispute, the Court now looks at the strength and pertinence of the relevant states' policies to determine which would be most seriously impaired if its laws were not applied to the coverage dispute. Turning to the facts surrounding this matter, it is undisputed that the mining operations that are alleged to have caused the sinkhole

---

[9] The Court notes that the case herein is distinguishable from *Shell Oil Co. v. Hollywood Marine, Inc.*, 701 So. 2d 1038 (5th Cir. 1997), and *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 780 F. Supp. 2d 514, 523 (E.D. La. 2011) (Engelhardt, J.), because the coverage issue before the Court is not one "separate and apart from the interests of the underlying plaintiffs."

occurred in Louisiana. The salt cavern is located in Louisiana and the geographic damage is located in this state. Thus, the case is readily distinguishable from *Murden v. Acands, Inc.*, 921 So. 2d 165 (La. App. 4th Cir. 2005), a case in which the affirmative injurious conduct did not occur within Louisiana. The State of Louisiana, although not a party to this litigation, has incurred millions of dollars in sinkhole-related expenses which may ultimately be borne by taxpayers of this state if TBC is held liable and cannot cover the damages. LIUI disputes TBC's suggestion that the plaintiff class is composed of Louisiana "residents" but regardless of whether they are "residents,' "citizens," landowners, out-of-state business operators like TBC, or some combination of them, it is clear that all of the injured parties have a connection to this state. Therefore, it is hardly a stretch to suggest that the direct and tangential economic effects of the sinkhole are being felt if not exclusively within Louisiana, by those with a connection to this state.

     LIUI's choice of law analysis devolves on Texas law because in addition to ignoring Louisiana's significant interest in this matter, LIUI places too much weight on TBC's corporate domicile. LIUI itself, although licensed to issue policies in Texas, is not a Texas company, and TBC disputes that the policy was actually negotiated and written or issued in Texas, suggesting that LIUI's underwriter is actually located in California. LIUI recites a plethora of Texas indicia with respect to the insurance contract but the fact that one state can "mechanistically count" more contacts with the contract than another state does mean that that state's law will apply unless the contacts are of the kind that implicate and seriously impair the policies of that state. La. Civ. Code art. 3537 cmt. (e). LIUI's choice of law analysis represents a robotic application of factors that are

more applicable in the usual contract sense but ignore the specific nature of the contract in this case. In short, LIUI's choice of analysis does not demonstrate that Texas is the state whose policies would be most seriously impaired if its laws were not applied. In fact, the outcome urged by LIUI would suggest that Texas has an interest in applying its laws to the coverage dispute in order to deprive its domiciliary of coverage, perhaps financially injure the company, and afford the company less protection than the law of the state where the company has been conducting business for years. *See In re Combustion, Inc.*, 960 F. Supp. 1056, 1068 (W.D. La. 1997) (Haik, J.).

The Court recognizes that its ruling has the potential to subject the policy to multiple interpretations based on extra-contractual factors such as attributes of the injured victims. But any concerns regarding predictability derive from LIUI's conscious decision to forego a choice of law provision in its policy. LIUI was well-aware that TBC had significant and long-standing business operations in Louisiana when the policy was drafted. Louisiana was only one of three states where TBC conducted business, and the *Doerr* decision, which placed the policy's pollution exclusion in jeopardy, was handed down over a decade before the LIUI policy was drafted. Having failed to eliminate the uncertainty of a choice of law analysis, LIUI cannot now complain about uncertainty as to its obligations under the policy depending on which state's law applies.[10] *See CXY Chemicals U.S.A. v. Gerling Global General Insurance Co.*, 991 F. Supp. 770, 777 (E.D. La. 1998) (Lemmon, J.) (addressing the insurer's failure to include a choice of law provision in its policy).

---

[10] A more cynical view would be that by omitting an express choice of law provision from its policy, LIUI retained the flexibility to argue for the application of the law of the jurisdiction most favorable to its position. (*See* Rec. Doc. 834, TBC's Supplemental Memorandum discussing the position that LIUI took in a declaratory judgment action filed in New Jersey). The Court expresses no opinion on this contention.

In sum, the Court finds that Louisiana has the most significant relationship with this litigation arising out of the sinkhole and the most interest in having its law applied to the coverage dispute. Louisiana is undisputedly the state whose policies would be most seriously impaired if its law were not applied to the coverage dispute.

The Court denies summary judgment at this time on TBC's claim for penalties and attorney's fees under Louisiana law. Both TBC and LIUI have analyzed this cause of action from a choice of law issue. The Court understands that Louisiana and Texas have differing statutory schemes regarding extra-contractual claims related to the insurer's duty of good faith and fair dealing. But the Court is more inclined to believe at this time that the question in this case is not necessarily one of conflict of laws but rather one of which state's "bad faith" provision was triggered in light of where the allegedly nefarious conduct occurred. The declaratory judgment action was filed in Texas but according to TBC the documents that were included with the complaint were produced to LIUI's counsel in Louisiana. The parties dispute whether the documents were privileged at all but if they were then it would seem that some of the conduct underlying the "bad faith" claim might have occurred in Louisiana and some of it might have occurred in Texas. The Court cannot make a dispositive determination with respect to the claim without a more concrete presentation of the facts.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that TBC's **Motion for Partial Summary Judgment (Rec. Doc. 744)** is **DENIED WITHOUT PREJUDICE;**

**IT IS FURTHER ORDERED** that TBC's **Motion for Partial Summary Judgment on Choice of Law Against Liberty Insurance Underwriters, Inc. (Rec. Doc. 757) is GRANTED IN PART AND DENIED IN PART** as explained above;

**IT IS FURTHER ORDERED** that LIUI's **Motion to strike Affidavits (Rec. Doc. 872)** is **DENIED AS MOOT**.

November 23, 2015

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE